UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 22-20014-CR-DPG

UNITED STATES OF AMERICA,
        Plaintiff,

vs.
                                                              )
MANUEL MELO,                                     )
        Defendant.                                       )
_____)

**DEFENDANT MELO'S OBJECTIONS TO PRESENTENCE
INVESTIGATION REPORT AND MEMORANDUM OF LAW**

Defendant Manuel Melo ("Melo"), by and through undersigned court-appointed

counsel, respectfully files his Objections to the Presentence Investigation Report ("PSR")

and supports them with a Memorandum of Law, and states:

1.  On October 5, 2022, the U.S. Probation Office ("USPO") issued the PSR [ECF No.

83].  The sentencing hearing is scheduled for November 9, 2022.

2.  In paragraph 2 of Part A ("The Offense") of the PSR, it mentions that, pursuant to a

written plea agreement, Plaintiff United States of America ("Government") will recommend a

three-level decrease in the Total Offense Level ("TOL") for timely acceptance of responsibility.

3.  However, as to paragraph 3 of Part A, the PSR only mentions the availability of the

"safety valve" under U.S.S.G. §5C1.2.  On September 29, 2022, Melo forwarded the

Government a written safety-valve proffer, as it had requested, in lieu of an in-person interview.

To date Melo has not heard back from the Government about that written safety-valve proffer.

1

4. In paragraph 13 of the PSR under "Role Assessment," Melo agrees with the drug quantity of 1,486 kilograms of cocaine. At the same time, Melo requests that the Court consider him for a minor role adjustment under U.S.S.G. §3B1.2.

5. In paragraph 17 of the PSR, the USPO states that Melo "does meet the criteria set forth in subdivision (1)-(4) of §5C1.2(a)," the safety valve. The USPO notes the Government has not advised her whether the defendant has been debriefed to satisfy the fifth criterion of §5C1.2. For that reason, the USPO has also stated that "a two-level reduction for safety valve...is not recommended." Melo objects to this finding because he fully and timely complied with the Government's instructions: a) there would be no in-person debriefing; and instead b) Melo should send the Government a written safety-valve proffer. On September 29, 2022, Melo timely sent his written safety-valve proffer to the Government. Additionally, and just as important, Melo voluntarily agreed to an in-person debriefing with federal agents in this case before the Court even had assigned him counsel.

6. Under "Offense Level Computation," paragraph 18, Melo objects to the Base Offense Level ("BOL") of 38. As discussed below in these Objections, Melo asks the Court to consider that he qualifies for a minor role. Melo would state that, as to the BOL calculation itself, he does not dispute the amount of cocaine (1,486 kilograms), nor that it would correspond to a BOL of 38 without a mitigating role. However, with a minor role adjustment, pursuant to §2D1.1(a)(5), Melo's BOL would be fixed at 34 instead of 38.

7. Melo also objects to the calculation of the BOL on another ground, that is, that qualifying for the safety valve provides for a two-level downward adjustment. The BOL would starts at 34, where minor role has been assigned, and then safety valve would reduce further that

BOL two levels bringing it down to 32.

8. Melo objects to paragraph 21 because it does not provide for a mitigating role. The facts and law merit Melo receive a minor role adjustment as will be demonstrated below.

9. Melo objects to paragraph 23 because, taking into account the above reductions for BOL, safety valve, and role, the Adjusted Offense Level should be 30 instead of 38.

10. Melo objects to paragraph 27 where the Total Offense Level ("TOL") is fixed at 35. Melo asks the Court to find the TOL should be 27. This follows because with the three-level reduction for timely acceptance of responsibility, as stated in paragraphs 25 and 26, and the other reductions mentioned above, the original BOL of 38 decreases eleven levels to 27.

11. Under Sentencing Options, paragraph 58, Melo would state that qualifying for the safety valve would not require the imposition of a minimum term of imprisonment of 10 years but rather  whatever the court believes is a reasonable sentence in this case.

12. Melo objects to paragraph 59 because it fixes the TOL at 35 instead of 27. With a TOL of 27, Criminal History Category 1, the corresponding guideline imprisonment range for Melo is 70-87 months.

13. As to paragraph 65 and 66 relating to fines, Melo asks the Court not to impose a fine because the financial analysis set forth in paragraphs 53-57 demonstrate that "he does not have the ability to pay a fine."

14. As to paragraph 68 of the PSR, Melo would state that he will identify "factors that warrant a departure and/or variance." Melo will present those facts to this Honorable Court in a separate Motion for Downward Variance.

**MEMORANDUM OF LAW**

1.  In the Eleventh Circuit the leading case on aggravating or mitigating role is *United States v. Rodriguez De Varon,* 175 F.3d 930 (11th Cir. 1999)(en banc), requiring the sentencing judge to consider two factors: a) the  defendant's role in the relevant conduct for which he is held accountable at sentencing; and b) his role compared to that of other identifiable participants in that relevant conduct.  *Id*. at 940.

2.  In paragraph 13 of the PSR, the USPO states that no defendant in this case should be assigned either an aggravating or mitigating role.  *See* ECF No. 83:5-6.  Such a conclusion is not warranted based upon the information available to the Government and the USPO.  In his safety-valve proffer, as corroborated by his voluntary post-arrest statement before being represented by counsel, Melo described what he did in this crime.

3.  As to the first factor under *Rodriguez De Varon*, *supra*, Melo is held accountable for his participation as one of three go-fast boat crew members for the transport of 1,486 kilograms of cocaine.  Such a particular role is classified at the low-end of the severity scale of the other participants who were organizer/leaders and manager/supervisors.

4.  At the top of a drug-trafficking organization ("DTO") there are organizers and leaders. They grow and harvest the drugs, manufacture them into the final powder product, package the cocaine into kilogram bricks, and arrange for their transport to coastal areas where boats are waiting to carry them to other countries.  In the next level below the leaders/organizers, there are mangers and supervisors of others.  The are responsible for, among other things, acquiring the go-fast boats and recruiting, people like Melo to serve as crew on the vessels on the high seas. Prior to his getting recruited to be involved in this crime, Melo worked as a fisherman and a cook

in Bani, Dominican Republic.

5.  In the above context, compared other identifiable participants in the crime, Melo clearly occupied a minor role when viewing the DTO's functioning as a whole even for this one particular venture.  Under *United States v. Rodriguez De Varon*, 175 F.3d 930 (11th Cir. 1999) (en banc), that is the second factor this Court considers when making its decision.  There is no good reason to exclude some of the participants of the DTO when deciding a minor role request for someone like Melo.  This quantity of cocaine had to come from "somewhere" for the commission of this individual trafficking crime.  And that "somewhere" involved the DTO owners of the drugs and go-fast vessel and others populating the higher echelons, like the recruiters, who made this crime happen.  In contrast, Melo was at the other end of that spectrum: once the go-fast vessel was loaded with the DTO's cocaine, he went on board to participate in the journey from Colombia to the Dominican Republic.  It was not Melo's cocaine.  It was not Melo's vessel.  Melo was a crew member and not an owner of any of the essential tools needed for the commission of this crime.

6.  Under the Commentary to U.S.S.G. §3B1.2, Application Note 5, a minor participant is defined as a defendant "who is less culpable than most other participants in the criminal activity, but whose role could not be described as minimal."  Under Application Note 3(C), a sentencing court applies a "totality of the circumstances" analysis.  Also, the sentencing court takes into account the particular facts of a case, and those facts should weigh heavily on the making of such a role determination.

7.  In 2015 the Sentencing Commission amended §3B1.2's Commentary (Amendment 794) to give additional guidance about factors to take into account to determine whether a

defendant qualifies for a minor role.  Among the non-exhaustive list of factors are: a) the degree to which the defendant understood the scope and structure of the criminal activity; b) the degree to which the defendant participated in planning or organizing the criminal activity; c) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority; d) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and responsibility and discretion the defendant had in performing those acts; and e) the degree to which the defendant stood to benefit from the criminal activity.  *See* U.S.S.G. §3B1.2, Commentary, Application Note 3(C) (2015).

8.  In interpreting the above Amendment, the Eleventh Circuit holds that it is legal error for a sentencing court to consider only one factor when disqualifying a defendant from receiving a minor role.  In *United States v. Cruickshank*, 837 F.3d 1182, 1194-95 (11th Cir. 2016), the Eleventh Circuit held that a large quantity of cocaine alone was an insufficient reason to deny a defendant minor role.  Rather, a defendant's role in the scheme must be analyzed under the "totality of the circumstances," including applying the factors described in *United States v. Rodriguez De Varon*, 175 F.3d 930 (11th Cir. 1999), and Guidelines Amendment 794.

9.  District courts routinely deny a mitigating role for crew members, holding they all have the same relevant conduct.  Courts erroneously maintain that the conduct of the crew members should not be compared to the conduct of the higher echelons of the DTO when deciding whether a crew member should be granted a mitigating role.  Such routine rulings fly in the face of the above legal standards.  There can be no dispute there exist individuals who manufacture and own the drugs, organize the voyage, obtain the vessel, and recruit the crew

members, the lowest level participants in the crime.  To ignore such a reality, contravenes the clearly delineated guidelines framework, and well-established case law, described above.

10.  With the foregoing in mind, and utilizing a "totality of the circumstances" standard and the factors described in §3B1.2, Commentary, Application Note 3(C), there clearly is a marked difference between the role Melo and the other crew members had in this crime and the roles of the leader/organizers and manager/supervisors.  Melo was not involved in any planning or organizing of the drug manufacture, drug ownership, securing the drug vessel, and recruiting fishermen to take the boat from Colombia to the Dominican Republic.  Under the facts and law, it respectfully is submitted that Melo should be assigned a minor role under *United States v. Rodriguez De Varon*, 175 F.3d 930 (11th Cir. 1999)(en banc), and the other authorities cited in this Memorandum of Law.

11.  As set forth in his Objections above, Melo objected to paragraph 17 of the PSR because it does not provide for a two-level decrease under safety valve.  Receiving safety valve also is a requirement for the Court to have the discretion to impose a sentence below the mandatory minimum of ten years.  For an award of safety valve under U.S.S.G. §5C1.2, as long as the defendant satisfies the five criteria under 18 U.S.C. §3553(f)(1)-(5), then he qualifies for its benefits.  *See* §2D1.1(c)(18).  The USPO recognizes that Melo qualified for safety valve under the first four criteria.  As to the fifth criterion, the Government has not yet notified the USPO the safety valve should be applied even though on September 29, 2022 Melo complied with the Government's request to provide a detailed written safety valve proffer.  *See* ECF No. 83:4, 7.

12.  If the Court accepts Melo's requests for a minor role adjustment and application of safety valve, then his TOL would be 27 with a corresponding imprisonment range of 70-87

months.  Because he has a Criminal History Category I, it respectfully is requested the Court fix his TOL at 27.  By way of a separate Motion for Downward Variance, Melo may ask this Honorable Court to consider imposing a sentence below the low-end of the above guideline range, that is, below 70 months.  However, Melo understands that he will have to demonstrate to this Court that such a sentence would be both a fair and reasonable punishment for this crime.

Respectfully submitted,

/ s / Martin A. Feigenbaum
Florida Bar No. 705144
P.O. Box 545960
Surfside, Florida 33154
Telephone: (305) 323-4595
Facsimile:  (844) 274-0862
Email: innering@aol.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished electronically this 12th day of October, 2022, by the CM/ECF system to all persons who are entitled to electronic notice in this cause.

/ s / Martin A. Feigenbaum