UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI
CASE NO.  22-20014-CR-GAYLES

UNITED STATES OF AMERICA,
                    Plaintiff,

v.

YESID DEGOBERTO EPIEYU EPIEYU,
                    Defendant.
_____/

**MR. EPIEYU'S OBJECTIONS TO
PRESENTENCE INVESTIGATION REPORT ("PSI")**

The PSI calculates Mr. Epieyu's total offense level at 37 based on a base offense level of 38 pursuant to U.S.S.G. § 2D1.1(a)(5) and the drug quantity table at subsection (c)(1), a two-level captain enhancement, and a three-level reduction for acceptance of responsibility. Mr. Epieyu, through undersigned counsel, respectfully makes the following objections.

**I.      The Government has confirmed that Safety Valve Provision Applies**

At ¶ 16, the draft PSI explains that, "The defendant does meet the criteria set forth in subdivision (1)-(4) of § 5C1.2(a). However, the government has not advised whether the defendant has been debriefed, whereby satisfying criterion (5) of § 5C1.2(a)." For that reason, the two-level safety valve reduction was not recommended. Mr. Epieyu had in fact satisfied all of the requirements for a safety valve reduction, and the Government has since confirmed by email that it has advised Probation that the defendants are entitled to the reduction.

1

The parties are thus in agreement that the reduction applies. Accordingly, Mr. Epieyu objects and requests that the following paragraphs reflect his safety valve eligibility: ¶¶ 16 (should apply safety valve), 26 (total offense level), and 53-54 (should reflect that Mr. Epieyu is not subject to a ten-year minimum sentence).

## II.     The Captain Enhancement Does Not Apply

Mr. Epieyu objects to ¶ 18 of the PSI, which recommends a two-level enhancement under § 2D1.1(b)(3)(C) for importing "a controlled substance under circumstances in which he acted as the pilot or captain while onboard the vessel carrying a controlled substance." The enhancement appears to have been recommended because the U.S. Coast Guard identified Mr. Epieyu as the master. However, as is recorded in reports of post-arrest interviews conducted by the Drug Enforcement Agency, all three defendants are consistent in explaining that they shared responsibilities—including navigation and "captain" responsibilities—for the three-man go-fast vessel that they were provided.

Specifically, all three defendants explained that Mr. Epieyu initially navigated the boat out of Colombian waters and that Mr. Diaz and Mr. Melo subsequently took responsibility for navigating the vessel. For example, according to the report of Mr. Diaz's post-arrest statement, "DIAZ stated that he along with MELO shared the title of captain after EPIEYU-EPIEYU navigated the vessel out of Colombia." According to the report of Mr. Melo's statement, "MELO stated that after half a day of travel he assumed control of the GFV and navigated it towards the Dominican Republic. MELO stated that he was at the helm when the vessel was discovered by the USCG." And

Mr. Epieyu's statement indicates, "EPIEYU-EPIEYU advised that after about a day of travel he relinquished control of the vessel to MELO." Thus, as a factual matter, there was no one person who was considered captain of the vessel.

Further, it is undisputed that neither Mr. Epieyu nor his co-defendants had any role in procuring or organizing the vessel or any of the cargo inside—all of which was prepared and packed by others before they were involved—nor did they have any role in planning the trip or its logistics. Mr. Epieyu is an impoverished fisherman from a tribal community in Colombia who accepted an offer to man the go-fast vessel in an effort to support his wife and three young children. In so doing, he was expected to follow exactly the instructions he received from those who were responsible for the vessel, and he did so equally with his two crewmates, now co-defendants. On these facts, Mr. Epieyu should not receive a captain enhancement.

With application of the safety valve reduction and removal of the enhancement, Mr. Epieyu's offense level is 33, yielding a guidelines range of 135 to 168 months.

## III.   The Minor Role Reduction Should Apply

Mr. Epieyu also objects to the PSI's failure to apply a minor role reduction at ¶¶ 12, 17, 20, 26, and 54.

The Sentencing Guidelines provide for a downward adjustment in a person's applicable offense level where he or she "was a minor participant in any criminal activity." § 3B1.2(b) (2018). The adjustment may be appropriate where, as here, a defendant is held accountable "for the conduct in which the defendant personally was involved," but he "performs a limited function in the criminal activity." U.S.S.G. §

3B1.2 cmt. n.3(A). The factors to be considered in the fact-based determination of whether to apply minor role include "(i) the degree to which the defendant understood the scope and structure of the criminal activity," "(ii) the degree to which the defendant participated in planning or organizing the criminal activity," "(iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making," "(iv) the nature and extent of the defendant's participation in the commission of the criminal activity," and "(v) the degree to which the defendant stood to benefit from the criminal activity." *Id.* at cmt. n. 3(C).

The forgoing factors were incorporated into the guidelines after a 2016 U.S. Sentencing Commission study found that "mitigating role is applied inconsistently and more sparingly than the Commission intended." U.S.S.G. Supp. to App'x C, amend. 794 (Nov. 1, 2016). The Commission specifically included the factors after being "persuaded by public comment and a detailed review of cases involving low-level offenders…that providing a list of factors will give the courts a common framework for determining whether to apply a mitigating role adjustment." *Id.* The Commission went on to include the following instructive example of the intended application of the factors: "a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline." U.S.S.G. § 3B1.2 cmt. n. 3(C).

In this case, Mr. Epieyu's conduct falls squarely within that contemplated by the minor role provision. He is an indigent tribal fisherman who, prior to his involvement in this offense, was living with and supporting his wife and three young

4

children (ages 4, 3, and 1) in a mud home that his family built for themselves on tribal lands. PSI, ¶ 37-38. He had no proprietary interest in the criminal activity in which he engaged and for which he has been held responsible, which was the transport of 1,486 kilograms of cocaine along with two co-defendants he had never met prior to his involvement in the conduct. Instead, Mr. Epieyu was promised payment—none of which he ultimately received—for the performance of discrete tasks associated with transporting the vessel. As such, his case is analogous to the example at cmt. n. 3(C), and accordingly, the factors under that provision weigh strongly in favor of application of the minor role reduction.

*First*, Mr. Epieyu had little or no understanding of the scope or structure of the overarching criminal activity. He had no role in or knowledge of the quantity of drugs that he would be transporting, when they would be transported, or where they were to be transported, let alone in the procurement of those drugs from suppliers or the sale of the drugs to buyers. *Second*, he played no role in the planning or organizing of the criminal activity, including the transportation itself. Mr. Epieyu's conduct began after he was taken to a beach where he was presented with a vessel that had already been prepared and packed by others. Prior to that, Mr. Epieyu was transported by others to random locations of their choosing, and he was made to wait until they were ready to transport him again, ultimately to the vessel in time for the departure time that these other individuals planned. *Third*, Mr. Epieyu had no decision-making authority, nor did he have any influence over the decision-making. He did not decide—and he could not have influenced—when the vessel departed, where it went,

what route it took, or what it carried. *Fourth*, the nature and extent of Mr. Epieyu's participation was limited to performing the tasks that were assigned to him by others on a boat assigned to him by others. Neither the boat nor the cargo belonged to Mr. Epieyu. *Fifth*, with regards to what Mr. Epieyu stood to gain, he was candid in informing law enforcement that he was offered $5,000 (U.S. dollars) for his conduct, which, in light of his indigency, would have been significant to him. He did not receive any of this amount in advance, and therefore did not ultimately gain anything from his conduct. However, it bears emphasis that the expected $5,000 amount was nearly negligible when compared to the estimated street value of the drugs Mr. Epieyu was tasked with helping to transport. The street value was approximately $178,320,000,[1] meaning that the amount Mr. Epieyu was offered for his role in this conduct represented less than 0.003% of the total value. Thus, substantially all of the $178 million profits associated with transporting the cocaine in question presumably would have gone to others who participated more significantly in—and are more culpable for—arranging their transport.

For these reasons, Mr. Epieyu respectfully requests application of the minor role reduction. Should the Court grant the reduction, Mr. Epieyu's guidelines calculation would be as follows: base offense level of 38, reduced to 34 (per § 2D1.1(a)(5)(A) and (B)(iii)); reduced to 32 under the safety valve provision, reduced

---

[1] The United Nations Office on Drugs and Crime estimated the 2019 street price of one gram of cocaine at $120. UNITED NATIONS OFFICE ON DRUGS AND CRIME, WORLD DRUG REPORT 2021: STATISTIC ANNEX 8.1 PRICE AND PURITY OF DRUGS 32 (2021), https://www.unodc.org/documents/data-and-analysis/WDR2021/8.1_Prices_an_purities_of_Drugs.pdf.

to 30 for minor role, and reduced to 27 for acceptance of responsibility. Given his criminal history category of I, *see* PSI ¶ 29, his guideline range would be 70-87 months.

Respectfully Submitted,

**MICHAEL CARUSO**
**FEDERAL PUBLIC DEFENDER**

By:    */s/ Srilekha Jayanthi*
          Assistant Federal Public Defender
          Special A No. A5502728
          150 W. Flagler Street, Suite 1700
          Miami, Florida 33130-1556
          Tel: (305) 530-7000
          Fax: (305) 536-4559
          srilekha_jayanthi@fd.org

## CERTIFICATE OF SERVICE

I HEREBY certify that on **October 18, 2022**, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Srilekha Jayanthi*
Srilekha Jayanthi

8